# Crutcher *v.* Taylor.

*Bill in Equity by Married Woman, to enforce Lien on Lands.*

1. *Equitable lien on lands, for purchase-money paid.*—A married woman can not assert an equitable lien on lands purchased by her husband, on the ground that her funds were used by him in paying the purchase-money, when the proof shows that the payment was in fact made with moneys borrowed by him on his individual credit, which he intended to repay from his wife's funds when received.

2. *Sale of lands by administrator, under probate decree; whether husband or wife is purchaser.*—When the husband is the highest bidder for lands sold by an administrator under a probate decree, and gives his note, with sureties, for the deferred payment, and is reported to the court as the purchaser, and the sale to him confirmed; the fact that he took from the administrator's attorneys, without the knowledge, consent, or authority of the wife, a receipt for the cash payment in her name, does not change the character of the sale, nor authorize the wife to claim any rights as a purchaser, as against a subsequent purchaser under a decree enforcing a vendor's lien for the unpaid note.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The original bill in this case was filed on the 11th February, 1874, by Mrs. *Henry* E. Crutcher, the wife of Andrew B. Crutcher, suing by her next friend, against her said husband, who was a son of Reuben W. Crutcher, deceased, and against the other children of said decedent, together with Morris K. Taylor as his administrator, and William Jones; and sought to establish a lien in the complainant's favor on certain lands, which were in the possession of said Jones under claim of ownership, as hereinafter stated, and a personal decree against said Taylor, or against him and Jones, for her moneys alleged to have been used by her husband in part payment of the purchase-money under a former sale. The lands had belonged to the said Reuben W. Crutcher, who died intestate prior to 1870; and they were sold by said Morris K. Taylor, as his administrator, on the 19th December, 1870, the terms of sale being one half cash, and the balance in twelve months, with interest, to be secured by note or bond with sureties, and a vendor's lien retained. Said

Andrew B. Crutcher was the highest bidder at the sale, and was reported to the court as the purchaser.   He gave his note under seal, with sureties, for the deferred payment, and made the cash payment to the administrator's attorneys, a few days after the sale ; and the sale to him was duly confirmed by the court.   On making the cash payment, said Crutcher took from the attorneys of the administrator, to whom the money was paid, a receipt in these words : "Dec. 30, 1870. Received of Mrs. Henry E. Crutcher, by the hands of A. B. Crutcher, $777.60, this being the cash payment of one half of the purchase on Lot No. 1 of lands belonging to the estate of Reuben W. Crutcher, deceased.  Said Lot No. 1 was purchased by said Mrs. Henry E. Crutcher ; said sum of money to be returned to her, her agent, or attorney, on demand, in the event that the Probate Court of Madison county fails to confirm the sale of said land ; otherwise to be retained for purpose above-said, to-wit, as cash payment on said sale." (Signed by M. K. Taylor, as administrator, per his attorneys.) This receipt was made an exhibit to the bill.

The note given for the deferred payment not being paid at maturity, the administrator filed a bill in equity against said Andrew B. Crutcher and his sureties on the note, to enforce a vendor's lien on the land ; and he obtained a decree, declaring a lien, and ordering a sale of the lands.   The lands were sold, under this decree, in December, 1872, James R. Spraggins becoming the purchaser, at the price of $400.   Objections to the confirmation of this sale were filed by said Andrew B. Crutcher, on account of the inadequacy of the price, and because Mrs. Crutcher (his wife) and the heirs of said Reuben W. Crutcher were not made parties to the suit ; alleging that the legal title was in the heirs, and that there was an outstanding equity in favor of Mrs. Crutcher, on account of the cash payment being made with her moneys, and a receipt for it taken in her name as the purchaser at the administrator's sale ; insisting that, on account of these defects in the title, the land would not sell at its value, and the balance of the purchase-money would be a personal liability on him and his sureties ; and asking that the complainant be required to bring in these persons as parties, in order that they might propound their respective interests, and be bound by the decree.   The chancellor set aside the sale, on account of the inadequacy of the price, and ordered a re-sale by the register ; but he overruled the objections on account of the want of necessary parties to the suit.   At the second sale by the register, on the 3d November, 1873, Mrs. Crutcher gave public notice of her claim, and read the receipt above set out as evidence of it.   At that sale, William Jones, one of the

defendants to the bill in this case, became the purchaser, at the price of $1,035; and the sale to him was confirmed by the chancellor, and a conveyance executed by the register.

The complainant and said Andrew B. Crutcher were married on the 1st August, 1866, in Mississippi, where they then resided; and they removed to Madison county, Alabama, in December, 1866. "At the time of her said marriage," as the bill alleged, "and at the time of said removal to Alabama, complainant had a separate estate, consisting partly of more than one thousand dollars due to her from persons residing in South Carolina; of which, her said husband, after their removal to Alabama, and before December 19th, 1870, received more than four hundred dollars, and also received about four hundred dollars borrowed on the faith and credit of her said separate estate." The statute laws of Mississippi, in reference to the separate estates of married women, were set out in the bill. The 5th paragraph of the original bill, as copied in the transcript, was in these words: "On December 19th, 1870, said Morris K. Taylor, as administrator *de bonis non* of the estate of Reuben Crutcher, deceased, under an order of the Probate Court of Madison county, sold at public sale, as Lot No. 1 of the lands of said estate, the northeast quarter of section 28, in township three, range two, west, in said county, *to your oratrix, Henry E. Crutcher*, at the price of $1,555.20, payable one half cash, and the balance in twelve months, with interest from day of sale, to be secured by bond with securities, and a vendor's lien retained on the land. On December 30, 1870, your oratrix, Henry E. Crutcher, paid to said administrator $777.60, belonging to the separate statutory estate of your oratrix, and took said administrator's receipt to your oratrix, as purchaser of said land, for said sum, as the cash half of said purchase-money. Said Andrew B., the husband of your oratrix, executed his bond, with securities, for the balance of the purchase-money, according to the terms of sale; and said administrator reported said sale to said Probate Court, as made to said Andrew B., by which it was confirmed as a sale to him." This is, probably, not a correct copy of the 5th paragraph of the original bill, which was amended, by leave of the court, as follows: "1. By striking out the words '*said Andrew B. Crutcher*,' between the words '*to*' in the ninth line, and '*at*' in the tenth line; and inserting, in place thereof, the words, '*your oratrix, Henry E. Crutcher*.' 2. By striking out the words '*said Andrew B.*,' in the sixteenth line of said paragraph, and inserting, in place thereof, the words '*your oratrix, Henry E. Crutcher*.' 3. By inserting between the letter '*B*'

and the word '*executed*,' in the twenty-fifth line of said para-
graph, the words '*the husband of your oratrix.*'"

The original bill stated the filing of the bill by the admin-
istrator, to establish and enforce a vendor's lien on the lands;
the decree rendered in his favor, in June, 1872, on decrees
*pro confesso* against the several defendants; the sale by the
register, on the 3d November, 1873, at which said William
Jones became the purchaser; and that he bought with full
knowledge of the complainant's claim, as evidenced by the
receipt, of which public notice was given at the sale. The
prayer of the bill was, "that said administrator may, by
decree of this court, be compelled to pay her said $777.60,
belonging to her separate estate, received by him, with inter-
est thereon; and if she is mistaken in this, her remedy, she
prays that said sum, with interest, may be established as a
lien on said land, and paid out of the proceeds of sale of the
same, under the decree of the court; and for such other and
further relief as the nature of her case requires."

Separate answers were filed by Taylor and Jones, which
were substantially the same; denying that the complainant
was the purchaser of the lands at the administrator's sale, or
that her funds were used in making the cash payment;
admitting that notice of her claim, as founded on said receipt,
was given at the second sale by the register, at which Jones
became the purchaser; and Taylor asserted that the receipt
was obtained from his attorneys, without his knowledge, by
false statements on the part of said Andrew B. Crutcher.
The answer alleged, also, the purchase by Spraggins at the
first sale made by the register, the setting aside of that sale
by the chancellor, and the overruling of the objections on
the part of Andrew B. Crutcher because Mrs. Crutcher and
the heirs of the intestate were not brought before the court.
In each of the answers demurrers were incorporated, for
want of equity in the bill, for multifariousness and misjoinder,
and because the complainant had an adequate remedy at law
against said Morris K. Taylor.

In the amended bill, which was filed after these answers
were put in, in addition to the amendments above mentioned,
a paragraph was added, as follows: "Pursuant to said decree
of June 5th, 1872, the register sold said lands on the 9th
December, 1872, to James R. Spraggins, for $400, and reported
said sale to the court on May 31st, 1873. On June 3d, 1873,
said Andrew B. filed his application in the cause, objecting
to the confirmation of the sale, because of inadequacy of
price; alleging that the legal title of the land was in the heirs
of said Reuben W. Crutcher, who were not parties, and that
said Taylor, as such administrator, on the 30th December,

1870, recognized your oratrix, who also was not a party to said cause, as the purchaser of said land at his sale, received of her $777.60, the cash installment of the purchase-money, and executed to her, as such purchaser, a receipt for the same, by which she acquired an equity in said land to that extent; and praying that said sale by the register, the decree establishing a vendor's lien, and the decrees *pro confesso* rendered in said cause, be set aside, and the complainant be required to make said heirs and your oratrix parties to said bill, that they might propound their interest in the land, and be bound by the order and decree of the court in the premises. Said administrator resisted said application, and insisted upon the right to proceed in the execution of said decree, regardless of the rights of your oratrix. Your oratrix had no knowledge, notice, or information that said administrator had reported the sale of said lands to said Andrew B. Crutcher, had the same confirmed, or had filed his said bill to enforce a vendor's lien, until after the rendition of said decree of June 5, 1872. Said administrator has, by his own acts, placed it out of his power to carry out his said contract of sale with your oratrix; and your oratrix now elects to rescind said contract, and to have a lien established on the land, for the amount of purchase-money paid by her, with the interest thereon; and for such other and further relief, as the nature of her case, on the original and amended bills, entitles her to have."

In his answer to the amended bill, Taylor repeated the averments and denials of his answer, insisting that Andrew B. Crutcher was the purchaser of the lands in his own name; and demurring to the bill as amended, because it showed that the complainant had an adequate remedy at law. Jones adopted the answer and demurrer of Taylor; and formal answers were filed by the other defendants, admitting the allegations of the bill. The complainant took the deposition of her husband, said Andrew B. Crutcher, who testified, in substance, that he received, prior to December, 1870, several hundred dollars of moneys belonging to his wife's statutory separate estate; that "no part of said identical money was used in making said cash payment" for the land—"that money had been used for other purposes, with the intention of replacing it;" that the cash payment was made with $500 borrowed from Isaac F. Deloney, and the residue from other persons named; that the money thus borrowed, and used in making said cash payment, "was borrowed on the faith of complainant's separate estate;" that the "said $500 was not paid back to said Deloney out of her separate estate, but he was shown a letter from her attorney in South Carolina before

[Crutcher v. Taylor.]

lending the money;" and that the residue, borrowed from other persons, was re-paid with her moneys. Deloney, whose deposition was taken by the defendants, testified that, on the 20th December, 1870, he lent or advanced $500 to said Andrew B. Crutcher, who " said that he wished to make a payment on land, and promised to ship more than enough cotton to cover the advance; but cotton declined, and the shipments made by him did not answer his purpose : he still owes a balance ;" and that the money was loaned for the exclusive purpose of securing a shipment of cotton as promised.

The demurrers to the bill, original and amended, were overruled by Chancellor R. S. WATKINS; but, on final hearing on pleadings and proof, Chancellor H. C. SPEAKE dismissed the bill, at the costs of the complainant's next friend, but without prejudice to her right to bring an action at law against said Morris K. Taylor individually, if advised so to do. The decree dismissing the bill is now assigned as error.

F. P. WARD, with whom was D. P. LEWIS, for appellant. The complainant filed her bill, claiming a lien on the lands for the moneys of her statutory separate estate used in paying for it; and afterwards amended her bill, so as to claim as a purchaser, electing to rescind the contract, because the administrator had placed it out of his power to comply with his contract, and claiming a vendee's lien for the part of the purchase-money paid by her. The amendment was properly allowed.—*Pitts v. Powledge*, 56 Ala. 147 ; *Long v. Patterson*, 51 Ala. 414 ; *Reed v. Scott*, 30 Ala. 640. Could not a vendee's lien be decreed, under the prayer for general relief in the original bill? Is there any material difference between alleging that the husband purchased for her, and that she purchased through him? The administrator is concluded by his receipt: he can not partly ratify, and partly repudiate the same transaction ; he can not retain the money, and dispute the complainant's character as purchaser.—Herman on Estoppel, §§ 476, 336. If the complainant was the purchaser, as the receipt conclusively establishes, and the administrator has placed it out of his own power to comply with his contract, she may elect to rescind, and claim a lien for the purchase-money paid.—3 Parsons on Contracts, 278 ; 1 Sugden on Vendors, 671 ; Browne on Stat. Frauds, § 120.

WALKER & SHELBY, *contra.*—The amendment makes an entirely different case from that set up in the original bill. 10 Pick. 128 ; *Larkins v. Biddle*, 21 Ala. 256 ; 1 Edw. Ch. 52. The administrator, in making the sale, was the mere agent of the court, under whose order he acted ; and if he refused to

make proper report of the sale, the purchaser might have compelled him to make it.—Rorer on Jud. Sales, 6, § 9; *Mason v. Osgood*, 64 N. C. 467.

PER CURIAM.—The equity of the bills, original and amended, depends, in any aspect of the case, upon the existence of two facts, neither of which the evidence establishes. The first is, that the money, with which the cash payment of the purchase-money of the lands was made, was the money of the appellant; and the second is, that the appellant, and not her husband, was the real purchaser of the lands. The cash payment, it is shown, and the evidence is without conflict, was made by the husband, with money for that purpose borrowed on his individual credit, and not from the money of the appellant. Nor had the husband, at the time the payment was made, received of the money of the appellant a sum sufficient to make it. He may have intended to re-pay the money borrowed, from moneys of the wife he expected to receive subsequently; but such intention would not change the ownership of the money paid.

Nor can it be said the appellant was the purchaser of the lands. Not dwelling upon her incapacity, legally and equitably, to enter into such a contract, the fact is, the husband was the bidder, gave the note and sureties for the deferred payment, was reported as the purchaser to the Court of Probate, and to him the sale was confirmed by that court. The receipt obtained by him for the cash payment, from the attorneys of the administrator, specifying the appellant as the purchaser, was given without the knowledge, or consent, or authority of the latter, and can not change the character of the sale, which was fixed by the report of the administrator and the decree of confirmation.

Affirmed.

